## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Margaret Seibel, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| MED-DATA, Inc., | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff Margaret Seibel ("Ms. Seibel"), individually and on behalf of all other similarly situated individuals, and by and through her undersigned counsel files this Class Action Complaint against Defendant Med-Data Inc. ("Med-Data") and alleges the following based upon her personal knowledge of the facts, and upon information and belief based upon the investigation of counsel as to all other matters.

### NATURE OF THE ACTION

1.      With this action, Plaintiff and the "Class" (defined below) seek to hold Defendant responsible for the harms it caused them resulting from the massive and preventable data breach that took place sometime between December 2018 and September 2019 through December 17, 2020, during which time a former Med-Data employee had saved and uploaded highly sensitive Med-Data files to a public-facing website called GitHub (the "Data Breach").[1]

2.      For over at least a year, Plaintiff's and Class members' data was left exposed to the public eye, unencrypted and unprotected.

---

[1] The Data Breach appears on the U.S. Department of Health and Human Services' online public breach tool showing that 135,908 were potentially impacted by the Data Breach. *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed April 29, 2021).

3.      Med-Data, founded in 1980, is a full-service healthcare revenue cycle management services provider that services thousands of hospitals, physicians, and healthcare systems and facilities nationwide.[2]

4.      The services offered by Med-Data include processing Medicaid eligibility, third-party liability, workers' compensation, and patient billing for its clients.

5.      In order to provide these services, Med-Data takes possession of its clients' patients' "Personal and Medical Information" (defined below), with the assurance that such information will be kept safe from unauthorized access. By taking possession and control of Plaintiff's and Class members' Personal and Medical Information, Defendant assumes a duty to securely store and protect the Personal and Medical Information of Plaintiff and the Class.

6.      Defendant breached this duty and betrayed the trust of its clients, Plaintiff and Class members by failing to properly safeguard and protect their Personal and Medical Information, thus enabling cyber criminals to steal and misuse it.

7.      The compromised Personal and Medical Information at issue includes (i) patient contact information (such as patient names, addresses, and dates of birth); (2) Social Security numbers; (3) diagnoses; (4) medical conditions; (5) claims information; (6) dates of service; (7) subscriber IDs; (8) medical procedure codes; (9) provider names; and (10) health insurance policy numbers.[3]

8.      Defendant's misconduct – failing to implement adequate and reasonable data security measures to protect Plaintiff's Personal and Medical Information, failing to timely detect

---

[2] https://www.meddata.com/about-us/patient-financial-life-cycle-services/ (last accessed April 29, 2021).

[3] https://www.hipaajournal.com/vendor-data-breach-involved-publication-of-phi-from-multiple-covered-entities-on-github/#:~:text=Med%2DData%20Inc.%20has%20confirmed,been%20accessed%20by%20unauthorized%20individuals (last accessed April 29, 2021).

the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices and employee training in place to safeguard the Personal and Medical Information, failing to honor its promises and representations to protect Plaintiff's and Class members' Personal and Medical Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

9.     Due to Defendant's negligence and data security failures, cyber criminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of 135,000 individuals.

10.     As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal and Medical Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and fraudulently using their Personal and Medical Information. Plaintiff has already been the victim of such fraudulent use of her Personal and Medical Information, as detailed below. Additionally, Plaintiff and Class members have lost time and money responding to and attempting to mitigate the impact of the Data Breach.

11.     Plaintiff brings this action individually and on behalf of the Class and seeks actual damages, statutory damages, punitive damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendant's data security protocols and employee training practices), reasonable attorney's fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## THE PARTIES

**Plaintiff Margaret Seibel**

12.     Plaintiff Margaret Seibel is a citizen and resident of Shawnee, Kansas.

13.     Plaintiff is a patient of, and received medical services from, AdventHealth Shawnee Mission, one of Defendant's clients.

14.     Plaintiff received a letter from Med-Data dated March 31, 2021 informing her that her Personal and Medical Information was compromised in the Data Breach, including name, Social Security number, physical address, date of birth, telephone number, and medical condition and diagnosis. *See* **Exhibit 1**, the "Notice."

15.     As required in order to obtain medical services from AdventHealth Shawnee Mission, Plaintiff provided them with her highly sensitive personal, health, and insurance information, including the Personal and Medical Information that was compromised in the Data Breach. As stated in the Notice, Plaintiff's Personal and Medical Information was compromised "because [Med-Data] assisted AdventHealth Shawnee Mission with processing your claim." *See* Notice at 1.

16.     Because of Defendant's negligence and failure to train and supervise its employees, which negligence and failure led to the Data Breach, Plaintiff's Personal and Medical Information is now in the hands of cyber criminals and has already been fraudulently used to harm Plaintiff.

17.     Recently, Plaintiff had someone try to impersonate her medical transportation when they showed up to her appointment to give her a ride home. The vehicle picking her up was not wheel-chair accessible like it had been in the past, which caused Plaintiff to suspect something was not right. Her suspicion kept her from getting into the car and, upon calling the medical

transportation company, learned that the driver who attempted to pick her up from her doctor's appointment was not their employee. She immediately filed a police report.

18.     Plaintiff has also incurred out of pocket expenses related to the removal of spyware she recently discovered on her laptop.

19.     Plaintiff continues to be under an imminent risk of subsequent identity theft and fraud, including medical identity theft and medical fraud.

20.     The imminent risk of medical identity theft and fraud Plaintiff now faces is substantial, certainly impending, and continuous and ongoing because of the negligence of Defendant in its failure to implement adequate data security protocols and train its employees, which negligence led to the Data Breach. Plaintiff has already been a victim of fraudulent activity and has spent time and money responding to the Data Breach in an attempt to mitigate the harms she has already experienced and will certainly continue to experience in the future as a result of the Breach.

21.     As a direct and proximate result of the Data Breach, Plaintiff had to subscribe to the 12-month identity theft protection offered to her by Defendant. This subscription will need to be renewed yearly for the rest of her lifetime.

22.     Plaintiff has suffered additional injury directly and proximately caused by the Data Breach, including damages and diminution in value of her Personal and Medical Information that was entrusted to Defendant for the sole purpose of obtaining medical services necessary for her health and well-being, with the understanding that Defendant would safeguard this information against unauthorized disclosure. Additionally, Plaintiff's Personal and Medical Information is at continued risk of compromise and unauthorized disclosure as it remains in the possession of Defendant and is subject to future breaches so long as Defendant fails to undertake appropriate

and adequate measures, including the implementation of enhanced employee training and data security protocols, to protect it.

**Defendant Med-Data**

23.     Med-Data, which is headquartered and has its principal place of business in Spring, Texas, is a full-service healthcare revenue cycle management services provider that services thousands of hospitals, physicians, and healthcare systems and facilities nationwide.

24.     The services offered by Med-Data to its clients include, but are not limited to, processing Medicaid eligibility, third-party liability, workers' compensation, and patient billing.

## JURISDICTION AND VENUE

25.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and members of the Class are citizens of states that differ from Defendant.

26.     This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in Texas. Also, upon information and belief, the Data Breach at issue occurred through Defendant systems by Defendant's employees physically located in Texas.

27.     Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Defendant is based in this District, conducts business through this District, and maintained Plaintiff's and Class members' Personal and Medical Information in this District.

<u>FACTUAL ALLEGATIONS</u>

**A.  The Data Breach and Defendant's Failed Response**

28.     On or about December 10, 2020, Defendant was notified by security researcher Jelle Ursem that some of its data had been discovered on the open-source software development hosting website, "GitHub" (the "Website").

29.     The Personal and Medical Information discovered on the Website was not encrypted.

30.     Defendant launched an investigation which determined that one of its employees had saved files containing the Personal and Medical Information to personal folders on the Website between December 2018 and September 2019. The files were later removed from the Website on December 17, 2020, meaning Plaintiff's and Class members' Personal and Medical Information was exposed to the world at large for at least thirteen (13) months and potentially longer.

31.     Defendant notified its impacted client entities on February 8, 2020, then inexplicably waited an additional seven weeks to notify Plaintiff and the Class.

32.     Apparently, Defendant needed two months following the completion of its investigation to notify the impacted individuals and provide them with the information and credit monitoring they needed to protect themselves against fraud and identity theft. Defendant was, of course, too late in the discovery and notification of the Data Breach.

33.     In addition to the severity of the Data Breach and the unreasonable amount of time it took for Defendant to finally become aware of it and notify the victims, Defendant has done very little to protect Plaintiff and the Class. In the Notice, Defendant encourages them "to remain vigilant against incidents of identity theft…" *See* Notice at 2. The Notice also offers Class members a woefully inadequate twelve months of free credit monitoring and identity protection services.

7

34.    In effect, Defendant is shirking its responsibility for the harm and increased risk of harm it has caused Plaintiff and members of the Class, including the distress and financial burdens the Data Breach has placed upon their shoulders.

35.    Defendant failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information, allowing cyber criminals to gain access to this wealth of priceless information for over a year before warning the criminals' victims to be on the lookout.

36.    Defendant failed to spend sufficient resources on monitoring and training its employees on proper data security protocols.

37.    Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), reasonable industry standards, common law, state statutory law, and its assurances and representations to its clients and its clients' patients to keep patients' Personal and Medical Information confidential and to protect such Personal and Medical Information from unauthorized access.

38.    Plaintiff and Class members were required to provide their Personal and Medical Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

39.    The compromised Personal and Medical Information at issue has great value to cyber criminals due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

**B. Defendant had an Obligation to Protect Personal and Medical Information under Federal Law and the Applicable Standard of Care**

40.    Defendant is covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts

8

A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

41. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

42. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

43. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

44. "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

45. HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

46.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

47.    Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

48.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[4]

49.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

50.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with

---

[4]    Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Personal and Medical Information of the Class.

51.    Defendant owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in its possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

52.    Defendant owed a duty to Plaintiff and the Class to implement processes that would detect a compromise of Personal and Medical Information in a timely manner.

53.    Defendant owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

54.    Defendant owed a duty to Plaintiff and the Class to disclose whether its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendant.

55.    Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

56.    Defendant owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**C.  Defendant was on Notice of Cyber Attack Threats in the Healthcare Industry and of the Inadequacy of its Data Security**

57.    Defendant was on notice that companies in the healthcare industry were targets for cyberattacks.

11

58.    Defendant was on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[5]

59.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[6]

60.    As implied by the above AMA quote, stolen Personal and Medical Information can be used to interrupt important medical services themselves. This is an imminent and certainly impending risk for Plaintiff and Class members.

61.    Defendant was on notice that the federal government has been concerned about healthcare company data encryption. Defendant knew its employees kept protected health information in their personal files, yet it appears that information was not encrypted.

62.    The United States Department of Health and Human Services' Office for Civil Rights urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the Department fined two healthcare companies approximately two million dollars for

---

[5] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.

[6] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[7]

63.    As a covered entity under HIPAA, Defendant should have known about its data security vulnerabilities and sought better protection for the Personal and Medical Information accumulating in its employees' unprotected files.

**D. Cyber Criminals Have and Will Continue to Use Plaintiff's and Class Members' Personal and Medical Information to Defraud Them**

64.    Plaintiff and Class members' Personal and Medical Information is of great value to cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

65.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[8] For example, with the Personal and Medical Information stolen in the Data Breach, which includes Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of

---

[7]"Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.

[8]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

identity theft.[9] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

66.      Personal and Medical Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[10]

67.      For example, it is believed that certain highly sensitive personal information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits in the state of Oklahoma.[11]

68.      The Personal and Medical Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both certainly impending and substantial. As the FTC has reported, if cyber thieves get access to a person's highly sensitive information, they will use it.[12]

69.      Cyber criminals may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

---

[9]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[10] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu.

[11]   *See*   *https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html*;   *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

[12]Ari Lazarus, *How fast will identity thieves use stolen info?*, Fed. Trade Comm'n (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[13]*Data Breaches Are Frequent*, *supra* note 11.

14

70.     For instance, with a stolen Social Security number, which is only one category of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[14] Identity thieves can also use the information stolen from Plaintiff and Class members to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

71.     Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[15]

72.     "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[16]

73.     As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where [protected health information] can go from $20 say

---

[14] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[15] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[16] *Id.*

up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[17] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[18]

74.     A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[19] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[20] In other words, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[21]

75.     Defendant's failure to offer more than twelve months of free identity theft monitoring to the Class is egregious. One year of identity theft monitoring is woefully inadequate, as the worst is yet to come.

76.     With this Data Breach, identity thieves have already started to prey on the victims, and we can anticipate that this will continue.

---

[17]IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*,    https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[18]*Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

[19]  *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[20] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[21]  "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

77.     Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[22]

78.     In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services every year for the rest of their lives, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

79.     Plaintiff and the Class have suffered or will suffer actual harms for which they are entitled to compensation, including but not limited to the following:

a.   Trespass, damage to, and theft of their personal property, including Personal and Medical Information;

b.   Improper disclosure of their Personal and Medical Information;

c.   The imminent and certainly impending injury flowing from actual and potential future fraud and identity theft posed by their Personal and Medical Information being in the hands of criminals and having already been misused;

d.   The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

---

[22] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

e.  Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f.  Loss of privacy suffered as a result of the Data Breach;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.  Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

j.  Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k.  Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

80.    Moreover, Plaintiff and Class members have an interest in ensuring that their Personal and Medical Information, which remains in the possession of Defendant, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's and Class members' Personal and Medical Information.

81.    Plaintiff and Class members are desperately trying to mitigate the damage that Defendant has caused them but, given the kind of Personal and Medical Information Defendant made so easily accessible to cyber criminals, they are certain to incur additional damages. Because identity thieves already have their Personal and Medical Information, Plaintiff and Class members

will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[23]

82. None of this should have happened. The Data Breach was preventable.

**E. Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal and Medical Information**

83. Data breaches are preventable.[24] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[25] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[26]

84. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[27]

85. Defendant required Plaintiff and Class members to surrender their Personal and Medical Information – including but not limited to their names, addresses, Social Security

---

[23] *Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

[24] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[25] *Id.* at 17.

[26] *Id.* at 28.

[27] *Id.*

19

numbers, medical information, and health insurance information – and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal and Medical Information.

86.     Defendant breached fiduciary duties owed to Plaintiff and the Class as guardian of their Personal and Medical Information.

87.     Many failures laid the groundwork for the occurrence of the Data Breach, starting with Defendant' failure to incur the costs necessary to implement adequate and reasonable cyber security training, procedures and protocols that were necessary to protect Plaintiff's and Class members' Personal and Medical Information.

88.     Defendant maintained the Personal and Medical Information in a reckless manner, making the Personal and Medical Information vulnerable to unauthorized disclosure.

89.     Defendant knew, or reasonably should have known, of the importance of safeguarding Personal and Medical Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal and Medical Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

90.     The risk of improper disclosure of Plaintiff's and Class members' Personal and Medical Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal and Medical Information from that risk left the Personal and Medical Information in a dangerous condition.

91.     Defendant disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that the Personal and Medical Information was protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices

in place to adequately safeguard Plaintiff's and Class members' Personal and Medical Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## CLASS ACTION ALLEGATIONS

92.    Plaintiff brings this action under Federal Rule of Civil Procedure 23 against Defendant individually and on behalf of all others similarly situated. Plaintiff asserts all claims on behalf of the Class and Subclass, defined as follows:

**Nationwide Class**

> All persons residing in the United States whose personal and/or medical information was compromised as a result of the Med-Data Data Breach that occurred from sometime between December 2018 and September 2019 through December 17, 2020.

**Kansas Subclass**

> All persons residing in Kansas whose personal and/or medical information was compromised as a result of the Med-Data Data Breach that occurred from sometime between December 2018 and September 2019 through December 17, 2020.

93.    Excluded from the Nationwide Class and Kansas Subclass are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

94.    Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

95.    The Nationwide Class and the Kansas Subclass are collectively referred to as the "Class" unless otherwise specified.

### a. Class Certification is Appropriate

96.     The proposed Class and Subclass meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

97.     Numerosity: The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical.

98.     Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal and Medical Information compromised in the same way by the same conduct of Defendant.

99.     Adequacy: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class and proposed Subclass that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

100.     Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay

and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

101. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendant engaged in the wrongful conduct alleged herein;

b. Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Personal and Medical Information;

c. Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class members' Personal and Medical Information violated the FTC Act and/or HIPAA, and/or state laws and/or Defendant' other duties discussed herein;

d. Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Personal and Medical Information, and whether it breached this duty;

e. Whether Defendant knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach;

f. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g. Whether Defendant breached contractual duties to Plaintiff and the Class to use reasonable care in protecting their Personal and Medical Information;

h.  Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.  Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

j.  Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

k.  Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class;

l.  Whether Defendant's actions and inactions alleged herein constitute gross negligence; and

m.  Whether Plaintiff and Class members are entitled to punitive damages.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Kansas Subclass)**

102.  Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

103.  Defendant gathered and stored the Personal and Medical Information of Plaintiff and the Class as part of the operation of its business.

104.  Upon accepting and storing the Personal and Medical Information of Plaintiff and Class members, Defendant undertook and owed a duty to Plaintiff and Class members to exercise

reasonable care to secure and safeguard that information and to use secure methods and to implement necessary data security protocols and employee training to do so.

105.    Defendant had full knowledge of the sensitivity of the Personal and Medical Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal and Medical Information was wrongfully disclosed, and the importance of adequate security.

106.    Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Personal and Medical Information that was in Defendant' possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

107.    Defendant owed Plaintiff and Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Personal and Medical Information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

108.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

109.    Defendant had duties to protect and safeguard the Personal and Medical Information of Plaintiff and the Class from being vulnerable to compromise by taking common-

25

sense precautions when dealing with sensitive Personal and Medical Information. Additional duties that Defendant owed Plaintiff and the Class include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant' networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal and Medical Information was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiff's and Class members' Personal and Medical Information in its possession by using reasonable and adequate security procedures and systems; and

c. To promptly notify Plaintiff and Class members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their Personal and Medical Information.

110.   Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Personal and Medical Information that had been entrusted to them.

111.   Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class members' Personal and Medical Information. Defendant breached its duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the Personal and Medical Information in its possession;

b. Failing to protect the Personal and Medical Information in its possession using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Personal and Medical Information;

d.   Failing to adequately train its employees to not store unencrypted Personal and Medical Information in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e.   Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal and Medical Information;

f.   Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

g.   Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal and Medical Information.

112.   Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

113.   As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

114.   Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Personal and Medical Information of Plaintiff and Class members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal and Medical Information of Plaintiff and Class members while it was within Defendant's possession and control.

115.   Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendant prevented Plaintiff and Class members from taking meaningful, proactive steps to securing their Personal and Medical Information and mitigating damages.

116.    As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, paying for spyware removal, responding to the fraudulent use of the Personal and Medical Information, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

117.    Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

118.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

119.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Kansas Subclass)**

120.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

121.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant had a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal and Medical Information of Plaintiff and the Class.

122.    Defendant is a covered entity under HIPAA, 45 C.F.R. §160.102, and as such is required to comply with the HIPAA's Privacy Rule and Security Rule. HIPAA requires Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the

privacy of protected health information." 45 C.F.R. § 164.530(c)(1). The confidential data at issue in this case constitutes "protected health information" within the meaning of HIPAA.

123.    HIPAA further requires Defendant to disclose the unauthorized access and theft of the protected health information of Plaintiff and the Class "without unreasonable delay" so that Plaintiff and Class members could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their personal information. *See* 45 C.F.R. §§ 164.404, 164.406, and 164.410.

124.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Personal and Medical Information. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

125.    Defendant gathered and stored the Personal and Medical Information of Plaintiff and the Class as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

126.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Personal and Medical Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

127.    Defendant breached its duties to Plaintiff and the Class under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal and Medical Information, and by failing to provide prompt notice without reasonable delay.

128.    Defendant's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

129.    Plaintiff and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

130.    The harm that occurred as a result of the Data Breach is the type of harm HIPAA and the FTC Act were intended to guard against.

131.    Defendant breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal and Medical Information.

132.    Additionally, Defendant had a duty to promptly notify Plaintiff and the Class of the Data Breach. For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. Defendant did not notify Plaintiff or Class members of the Data Breach until on or around March 31, 2021, despite knowing on or before December 10, 2020 that unauthorized persons had accessed and/or viewed or were reasonably likely to have accessed and/or viewed private, protected, personal information of Plaintiff and the Class.

133.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

134.    Defendant's violation of the FTC Act and HIPAA constitutes negligence *per se*.

135.    As a direct and proximate result of Defendant' negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

30

136.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

137.    Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Kansas Subclass)**

138.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

139.    Defendant entered into various written contracts with its clients, including AdventHealth Shawnee Mission, to perform services that include, but are not limited to, processing Medicaid eligibility, third-party liability, workers' compensation, and patient billing.

140.    These contracts were made expressly for the benefit of Plaintiff and the Class, as Plaintiff and Class members were the intended third-party beneficiaries of the contracts entered into between Defendant and its clients. Indeed, Defendant knew that if it were to breach these contracts with its clients, the clients' patients – Plaintiff and Class members – would be harmed.

141.    Defendant breached the contracts it entered into with AdventHealth Shawnee Mission and its other clients by, among other things, failing to (i) use reasonable data security measures, and (ii) implement adequate protocols and employee training sufficient to protect Plaintiff's Personal and Medical Information from unauthorized disclosure to third parties.

142.    As foreseen, Plaintiff and the Class were harmed by Defendant's breach of its contracts with its clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

143.    Plaintiff and Class members are also entitled to their costs and attorney's fees incurred in this action.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Kansas Subclass)**

144.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

145.    Plaintiff and the Class bring this claim in the alternative to other claims and remedies at law.

146.    Defendant, by way of its affirmative actions and omissions, including breaching its duties of care, was unjustly enriched by obtaining monetary benefits for the secure processing of patient's medical billings and claims while failing to reasonably secure Plaintiff's and Class members' Personal and Medical Information.

147.    Plaintiff and Class members suffered as a direct and proximate result of Defendant's failure to reasonably secure the Personal and Medical Information entrusted to Defendant.

148.    Accordingly, Plaintiff and Class members are entitled to relief in the form of disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF KAN. STAT. ANN. § 50-7A02(A), *ET SEQ.*
**(On Behalf of Plaintiff and the Kansas Subclass)**

149.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

150. Defendant was required to accurately notify Plaintiff and the Kansas Subclass if Defendant became aware of a breach of its data security system (that was reasonably likely to have caused misuse of Plaintiff's and Subclass members' Personal and Medical Information) in the most expedient time possible and without unreasonable delay under Kan. Stat. Ann. § 50-7a02(a).

151. Defendant is a business that owns or licenses computerized data that includes personal information, as defined by Kan. Stat. Ann. § 50-7a02(a).

152. Plaintiff's and Kansas Subclass members' Personal and Medical Information includes personal information as covered under Kan. Stat. Ann. § 50-7a02(a).

153. Because Defendant was aware of the Data Breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Kan. Stat. Ann. § 50-7a02(a).

154. Thus, by disclosing the Data Breach to its clients and then waiting an additional six weeks to disclose the Data Breach to the impacted patients (including Plaintiff and the Kansas Subclass), Defendant violated Kan. Stat. Ann. § 50-7a02(a).

155. As a direct and proximate result of Defendant's violations of Kan. Stat. Ann. § 50-7a02(a), Plaintiff and the Kansas Subclass suffered damages, as described throughout the Complaint.

156. Plaintiff and the Kansas Subclass seek relief under Kan. Stat. Ann. § 50-7a02(a), including but not limited to, broad equitable relief.

### SIXTH CAUSE OF ACTION
### DECLARATORY AND INJUNCTIVE RELIEF
**(On Behalf of Plaintiff and the Class or, alternatively, Plaintiff and the Kansas Subclass)**

157. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

158.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

159.    As previously alleged, Plaintiff and members of the Class entered into implied contracts with Defendant, which contracts required Defendant to provide adequate security for the Personal and Medical Information it collected from Plaintiff and the Class.

160.    Defendant owes a duty of care to Plaintiff and Class members that require it to adequately secure Plaintiff's and Class members' Personal and Medical Information.

161.    Defendant still possesses the Personal and Medical Information of Plaintiff and the Class members.

162.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class members.

163.    Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their Personal and Medical Information and Defendant's failure to address the security failings that led to such exposure.

164.    There is no reason to believe that Defendant's employee training and security measures are any more adequate now than they were before the breach to meet Defendant's contractual obligations and legal duties.

165.    Plaintiff and the Class, therefore, seek a declaration (1) that Defendant's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its contractual obligations and duties of care,

Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

    a.   Ordering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.   Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

    c.   Ordering that Defendant audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

    d.   Ordering that Defendant provide employee training regarding the dangers and risks inherent in using file-sharing websites like the Website at issue here to store and/or transmit Personal and Medical Information;

    e.   Ordering that Defendant cease transmitting Personal and Medical Information via file-sharing websites like the Website at issue here;

    f.   Ordering that Defendant cease storing Personal and Medical Information on file-sharing websites like the Website at issue here;

    g.   Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, any Personal and Medical Information not necessary for its provision of services;

    h.   Ordering that Defendant conduct regular database scanning and security checks; and

35

i.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, patient personally identifiable information and patient protected health information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.  An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.  A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated: May 4, 2021                                 Respectfully submitted,

                                                  */s/ William B. Federman*
                                                  William B. Federman
                                                  FEDERMAN & SHERWOOD
                                                  TBA #00794935
                                                  SD TX Bar #21540
                                                  10205 North Pennsylvania Avenue
                                                  Oklahoma City, Oklahoma 73120
                                                  Telephone: (405) 235-1560
                                                  Facsimile: (405) 239-2112
                                                  wbf@federmanlaw.com

                                                  -and-

                                                  212 W. Spring Valley Road
                                                  Richardson, TX  75081

                                                  *Counsel for Plaintiff and the Putative Class*